UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

NARDI CAMPOS NAVARRO,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

No. 5:26-cv-02171-AYP

**ORDER GRANTING PETITIONERS PETITION FOR WRIT OF HABEAS CORPUS**

## I.   INTRODUCTION

Petitioner Nardi Campos Navarro is an immigration detainee seeking asylum proceeding with a petition for writ of habeas corpus filed on April 15, 2026. (Dkt. Nos. 1, 3.) Petitioner is a noncitizen and native of Peru who is detained at the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center ("Adelanto"). (Dkt. No. 1 at 2.) On March 29, 2023, Petitioner crossed the border near Eagle Pass, Texas, and the United States Border Patrol took her into custody. She was placed into Expedited Removal on March 30, 2023. After an asylum officer concluded Petitioner had credible fear of future harm in April 2023, she was released by ICE on parole without any bond requirement. On January 27, 2026, Respondents put an ankle monitor on Petitioner. Then on February 3, 2026, Respondents re-detained Petitioner.

In this habeas action, Petitioner challenges the legality of her re-detention and continued civil confinement, asserting that Respondents violated the Due Process

Clause of the Fifth Amendment by revoking her liberty without notice and a hearing, and without any individualized determination that detention was warranted. Petitioner argues that by releasing her on an order of her own recognizance ("OREC") after determining that she was not a danger nor a flight risk, U.S. Border Patrol and Border Protection ("USBP") conferred upon her a freedom from physical restraint protected by the Due Process Clause, and that this liberty interest could not be withdrawn absent constitutionally adequate procedural safeguards.

Having reviewed the record, and consistent with several recent decisions in this District, the Court concludes that Petitioner's re-detention on February 3, 2026—without notice, justification, or evidence of changed circumstances—violated due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re detention absent adequate pre-deprivation notice and an individualized hearing.

## II.    FACTUAL BACKGROUND

Petitioner is a native and citizen of Peru. (Dkt. No. 1 at 3.) On March 29, 2023, Petitioner crossed the border near Eagle Pass, Texas, and the United States Border Patrol took her into custody. *Id.* On March 30, 2023, she was placed in Expedited Removal. *Id.* On April 12, 2023, an Asylum Officer ("AO") interviewed Petitioner and completed a Credible Fear Determination checklist and Written Analysis. *Id.* at 4. After interviewing Petitioner, the AO concluded that Petitioner provided credible testimony that she can establish past persecution and had a credible fear of future harm if returned to Peru. *Id.* That same day, Department of Homeland Security ("DHS") Officials served Petitioner with a Notice to Appear ("NTA"). *Id.*; Dkt No. 1-2, Exh. C.

On April 18, 2023, having determined that Petitioner was neither a flight risk nor danger to others, ICE released Petitioner on parole with reporting requirements,

and without any bond requirement. (Dkt No. 1-2, Exh. C.) She was instructed to appear at the Los Angeles ICE Field Office on May 18, 2023. (Dkt. No. 1-1 at 2.)

As required, Petitioner appeared at the Los Angeles ICE Field Office on May 18, 2023. (Dkt No. 1-2, Exh. C.) At that time, Petitioner was again determined not to pose any flight risk or threat to others, and she was paroled pursuant to an Order of Release on Recognizance ("OREC") and placed in the Intensive Supervision Appearance Program ("ISAP"). She was provided with a cell phone to report to ICE regularly, which she did. (Dkt. No. 1-1 ¶7.) On January 27, 2026, ICE put on an ankle electronic monitoring device. (Dkt. No. 1 at 2.)

Petitioner claims she complied with all ISAP check-in requirements and did not receive any explanation, justification or hearing before ICE put the ankle monitor on. *Id.* at 4. She further claims that she was "stunned" when she was re-arrested by ICE on February 3, 2026, at a regular check-in because she had complied with all ISAP check-in requirements. *Id.*

Respondents dispute this claim. They include form I-213 that says she "was informed of her ATD program violations and that the violation was subject to a custody redetermination." (Dkt. No. 7-1 at 3.) Respondents allege Petitioner violated her release conditions with ATD eleven times between October 24, 2024–January 22, 2026, including missing biometric check-ins and missing virtual home visits with ISAP. (Dkt. No. 7; Dkt. No. 7-1 at 4.) Respondents state that "[a]nkle monitors are a practical way to help avoid the need for detaining individuals with ATD term violations, such as Petitioner here." Respondents do not allege that Petitioner has a criminal record.

Petitioner argues she did not receive any notice specifying why she was restrained, subject to electronic monitoring or notice and process for her re-detention. Petitioner has been in the United States for almost three years.

In this habeas action, Petitioner argues that being subjected to electronic monitoring, her re-arrest and her re-detention violates the Due Process Clause and

her statutory rights under the INA. Petitioner seeks an order requiring Respondents to: (1) immediately release her from detention; (2) prohibit her re-arrest without individualized notice of the basis of the impending revocation of her parole and a pre-deprivation hearing to contest such arrest before a neutral decisionmaker; (3) prohibit Respondents from placing any monitoring device on Petitioner's person without a hearing before a neutral decisionmaker; (4) and otherwise staying in compliance with the INA and its implementing regulations. (Dkt. No. 1 at 3.) Petitioner also asks this Court to order Respondents not to transfer her outside of the district or deport her for the duration of these habeas proceedings. *Id*.

Except with respect to Petitioner's request to alter the conditions of her parole and the APA claim, as set forth below, Respondents are not presenting an opposition to the habeas arguments at this time. (Dkt. No. 7 at 2.)

Accordingly, the Court orders that the Petition be GRANTED in part.

### III.   PROCEDURAL HISTORY

Petitioner filed a Petition for writ of habeas corpus on April 27, 2026. (Dkt. No. 1.) The Court filed Notice of General Order 26-05 and Briefing Schedule on April 28, 2026. (Dkt. No. 5.) Petitioner voluntarily consented to have a Magistrate Judge conduct all further proceedings. (Dkt. Nos. 3, 8.)

Respondents submitted their Answer to the Petition on May 5, 2026. (Dkt. No. 7.) Petitioner submitted a Reply to Respondents Answer to the Petition on May 7, 2026. (Dkt. No. 9.) The matter is fully briefed.

### IV.   DISCUSSION

Petitioner argues her detention is unlawful under 28 U.S.C. § 2241, the Fifth Amendment's procedural and substantive Due Process clause, and violation of the Administrative Procedures Act. Respondents state that except with respect to Petitioner's request to alter the conditions of her parole and the APA claim,

"Respondents are not presenting an opposition to the habeas arguments at this time." Accordingly, the Court concludes that Petitioner's continued detention is unlawful.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### A. Respondents Did Not Properly Revoke Petitioners Parole

Respondents did not properly revoke Petitioner's parole. When Petitioner arrived in the United States in 2023, ICE detained her briefly, then released her on an OREC. (Dkt. No. 1-1 ¶ 12.) By issuing the OREC, ICE necessarily determined that Petitioner would not pose a danger and was likely to appear for future proceedings. *See* 8 C.F.R. § 236.1(c)(8).[1]

Respondents provided Petitioner with an Interim Notice Authorizing Parole on April 18, 2023.[2] (Dkt. No. 1-2 at 8.) Per its own regulations regarding parole from custody, "[t]he parole of aliens . . . would generally be justified only on a case-by-case

---

[1] "Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . []if] such *release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.*" 8 C.F.R. § 236.1(c)(8) (emphasis added).

[2] "Any alien paroled into the United States under section 212(d)(5) of the Act, including any alien crewmember, shall be issued a completely executed Form I–94." 8 C.F.R. § 235.1(h)(2).

basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b); *see Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1199 (W.D. Wash. 2025). The grant of parole indicates a determination that Petitioner is not a flight risk or danger to the community. In other cases, the respondents acknowledge, it "'has long been recognized by the Board of Immigration Appeals' that the discretion to revoke release 'is limited to situations in which there has been a "change [of] circumstance" since the non-citizen was initially released.'" *Y.M.M. v. Wamsley*, No. 2:25-CV-02075, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025); 8 C.F.R. § 236.1(c)(9). *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) ("[A]bsent changed circumstances . . . ICE cannot redetain [Petitioner].").

The Respondents have not provided a notice of revocation or any document showing that Petitioner's parole has been revoked. (Dkt. No. 7.) In fact, it appears from the record that Petitioner was arrested before she was given any notice of alleged ATD program violations. *See* Dkt. No. 7-1 (noting that Enforcement and Removal Operations ("ERO") encountered Petitioner at her ICE appointment and arrested Petitioner and then informed Petitioner of her ATD program violations). There is nothing in the record suggesting that the government provided notice to Petitioner of the reasons she was re-detained on February 3, 2026, such as a written individualized explanation of changed circumstances. Nor did Petitioner receive notice that her parole was no longer supported by humanitarian reasons or for the public benefit. With no notice, she was not provided any opportunity to contest any purported justification for her re-arrest.

### B. Petitioner's Detention Violates Due Process.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all

"persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94. Freedom from physical restraint lies at the core of this protection. *See id.* at 690–91.

When USBP released Petitioner on an OREC after determining that she was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

Respondents' choice to not oppose Petitioner's habeas arguments—and thus her due process claims—in their Answer is in effect a concession that the Petition should be granted. *See Singh v. Warden Desert View Annex, et al.*, No. 26-cv-00440-FMO-AJR, Dkt. 9 (C.D. Cal. Feb. 9, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession of petitioner's argument"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"). *See also N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.").

Regardless, even if Respondents had not conceded the issue, the Court would grant the Petition on the merits of Petitioners' due process claim. A growing body of

decisions in this District and across the Ninth Circuit have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. *See M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in). *See also Cruz v. Lyons,* No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *1 (C.D. Cal. Nov. 6, 2025) (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in).

In analyzing a procedural due process claim, the Court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge. Id*. at 1179–80. The *Mathews* framework considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

1. ***Constitutionally Protected Liberty Interest***

"Freedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey* at 408 U.S. at 482. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop...ties" in this country, "[her] constitutional status changes accordingly," and she "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher,* 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after briefly detaining Petitioner in March–April 2023, USBP released her on her own recognizance. (Dkt. No. 1 at 4.) Until she was re-detained in February 2026, Petitioner had spent nearly all of her three years in the United States released

on the OREC. *Id*. Petitioner is entitled to at least those protections described above with respect to her protected liberty interest in remaining out of immigration custody.

### 2. *Procedural Protections*

#### a) Private Interest

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her life out of custody. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). While Petitioner has remained subject to an OREC, which is a form of conditional parole, following her release in April 2023, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles [her] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioners' release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for about three years before her re-detention. (Dkt. No. 1 at 23.) As her circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following her release from immigration custody, Petitioner has lived in the United States filed for asylum and been an active member of her community church. *See id*, Exh. D (including five support letters from members of her church community who all note that she is a valued member and one of the church's nursey workers). While

individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts, including the undersigned Judge, have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g.*, *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *6 (C.D. Cal. Mar. 27, 2026) (finding petitioner had resided in the United States for approximately a year and half before her recent re-detention amounted to a liberty interest); *Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under Section 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects Petitioner's substantial liberty interest in maintaining her freedom from confinement.

### b) Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention

hearing." *Cruz*, 2025 WL 4051129, at *4. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on conditional parole. 8 C.F.R. § 212.5 allows for release on Parole "only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5. "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Since her release, Petitioner has not given any reason to think that the Government's initial determination was in error. Petitioner complied with her conditions of supervision, including by reporting for regular check-ins with ICE, and residency restrictions. (Dkt. No. 1 at 4.) Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

### c) Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously" released noncitizens like Petitioners "without a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4 (collecting cases). "[T]he government has no

legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in her unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.

### C. Petitioners Remaining Claims

Because the Court concludes that Petitioner's release is authorized under Due process grounds, it declines to address her alternative arguments for Unlawful Arrest and the APA. Additionally, the Court declines to address Petitioners request regarding the ankle monitor that was put on Petitioner prior to her detention.

## V.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to IMMEDIATELY RELEASE Petitioner, Nardi Campos Navarro (A# 246-643-485) from custody, subject to conditions of supervision that existed prior to her detention on February 3, 2026, along with her personal belongings and possessions, including her identification, work permits, and other documentation, and preventing her re-

detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government will bear the burden to prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk before Petitioner may be re-detained; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

Dated: June 23, 2026

_____
HONORABLE ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE